46 S.W.3d 864 (2001)
TEXAS NATURAL RESOURCE CONSERVATION COMMISSION, Petitioner,
v.
Tammy WHITE f/k/a Tammy Hand, Respondent.
No. 00-0348.
Supreme Court of Texas.
Argued January 31, 2001.
Decided April 26, 2001.
Rehearing Overruled June 21, 2001.
*866 C. W. Rocky Rhodes, Locke Liddell & Sapp, Austin, John H. Marks, Jr., Liddell Sapp Zivley Hill & Laboon, Dallas, Craig L. Weinstock, Liddell Sapp Zivley Hill & Laboon, Houston, John Cornyn, Andy Taylor, Linda Eads, Nelly R. Herrera, Office of Atty. Gen. of Texas, Kimberly Kay Coogan, Adams Coffey & Duesler, Austin, for Petitioner.
James K. LaRoe, III, Craig S. Douglass, Law Office of James K. LaRoe, Dallas, Kerwin B. Stephens, Stephens & Meyers, LLP, Graham, for Respondent.
Justice ABBOTT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice BAKER, Justice HANKINSON and Justice JEFFERSON joined.
In this case, we decide two issues: whether a stationary electric motor-driven pump is "motor-driven equipment" under Texas Tort Claims Act section 101.021, and whether the pump's "operation or use" caused the plaintiff's property damage. White sued the Texas Natural Resource Conservation Commission (TNRCC) after a fire destroyed her business. The TNRCC filed a motion to dismiss for lack of jurisdiction claiming that White's allegations did not support a waiver of sovereign immunity under the Tort Claims Act. The trial court denied the motion. On interlocutory appeal, the court of appeals affirmed, reasoning that White sufficiently alleged that the TNRCC's pump was "motor-driven equipment" and that the pump's operation or use caused her property damage-and therefore that section 101.021's sovereign-immunity waiver could apply. 13 S.W.3d 819. We hold that the TNRCC's pump is "motor-driven equipment," but that the operation or use of that equipment did not cause White's property damage. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the case for lack of subject-matter jurisdiction.

I. Facts
Tammy White owned a store on land adjacent to underground gasoline tanks. When the tanks began to leak, gas fumes migrated onto her property. White informed the TNRCC about the fumes, and the TNRCC dug a trench on White's property and installed a motor-driven pump to dissipate the fumes. The TNRCC removed the pump several days after installing it. Six days later, the fumes migrated to and pooled in the corner of White's store and started a fire that razed it. White sued the TNRCC, asserting that her claim fell within the Texas Tort Claims Act's waiver of sovereign immunity for property damage proximately caused by a governmental unit's use of motor-driven equipment. That waiver provision states:
A governmental unit in the state is liable for:
(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment.
TEX. CIV. PRAC. & REM.CODE § 101.021(1)(A).
The TNRCC filed a "Motion to Dismiss for Lack of Jurisdiction Based on Sovereign Immunity." The TNRCC asserted that sovereign immunity was not waived under the Tort Claims Act because the pump was not "motor-driven equipment" and because White had not alleged that its operation or use caused the fire. The trial court denied the TNRCC's motion, and the *867 TNRCC filed an interlocutory appeal. See TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8) (allowing interlocutory appeals from orders denying a governmental unit's plea to the jurisdiction). The court of appeals affirmed. It held that, for purposes of section 101.021, White alleged sufficient facts to establish that the TNRCC's pump was "motor-driven equipment," as that term is used in the Act, and that White's factual allegations that the TNRCC dug a trench and installed a pump on her property, improperly operated the pump, and thereby caused her injury, were sufficient to defeat the TNRCC's plea to the jurisdiction. 13 S.W.3d 819. We granted the TNRCC's petition for review.

II. Jurisdiction
We first consider whether we have jurisdiction to decide this case. Because this is an interlocutory appeal from the denial of a plea to the jurisdiction and there was no dissent in the court of appeals, we have jurisdiction only if we determine that the court of appeals held differently from a prior decision of another court of appeals or of this Court on a question of law material to the decision of the case. See TEX. GOV'T CODE §§ 22.001(a)(2), 22.225(c); Coastal Corp. v. Garza, 979 S.W.2d 318, 319 (Tex.1998). Such conflicts jurisdiction exists when one case "`would operate to overrule the other in case they were both rendered by the same court.'" Coastal Corp., 979 S.W.2d at 319-20 (quoting Christy v. Williams, 156 Tex. 555, 298 S.W.2d 565, 568-69 (1957)). In other words, it must appear that the decisions in the two cases are "so far upon the same state of facts" that they would control one another. Id. at 320 (emphasis in original).
The TNRCC argues that we have conflicts jurisdiction because the court of appeals' opinion conflicts with the Fourth Court of Appeals' opinion in Schaefer v. City of San Antonio, 838 S.W.2d 688 (Tex. App.-San Antonio 1992, no writ). In Schaefer, the court of appeals held that a stationary electric motor-driven pump was not "motor-driven equipment" under the Tort Claims Act. Id. at 693. White counters that no conflict exists because the court of appeals' conclusion that such a pump was not "motor-driven equipment" is not a holding but merely dicta.
Noting that the scope of "motor-driven equipment" "must be understood to be fairly broad," the court of appeals in this case concluded that, in alleging injury caused by a stationary electric motor-driven pump, "White ... alleged sufficient facts to establish that TNRCC's pump was `motor-driven equipment' as that term is used in the act." 13 S.W.3d. at 825-26.[1] By contrast, Schaefer holds: "Because the status of stationary electric motor-driven pumps as `motor-driven equipment' is questionable at best, we conclude that the City Water Board's sovereign immunity has not been clearly and explicitly waived. Therefore, we conclude that the water pump in question is not `motor-driven equipment' for purposes of the Act." Schaefer, 838 S.W.2d at 693. Despite White's argument otherwise, this language is part of Schaefer's holding, not dicta.
Schaefer sued the San Antonio Waterworks Board for property damage from a broken water line near his property. Id. at 689. He argued that the City had waived sovereign immunity under section 101.021(1)(A), the provision at issue in this case. Among other claims, he asserted *868 that the City's use of motor-driven pumps to drive water through its water lines caused the water to shoot out of the broken line and onto his property.
The Schaefer court made two holdings: (1) the city was not "operating" or "using" the water pump and (2) the pump was not "motor-driven equipment." Id. at 693. Certainly, the court could have relied on either determination to reach its ultimate conclusion that sovereign immunity had not been waived. But it relied on both. Because of the factual similarities between Schaefer and this case, and the divergence between the two cases' holdings, we conclude that one decision "would operate to overrule the other." Coastal Corp., 979 S.W.2d at 319-20. We therefore have jurisdiction, and we now address the merits of this case.

III. Analysis
As a governmental unit, the TNRCC is immune from both suit and liability for White's injury unless the Texas Tort Claims Act waives that immunity. See TEX. CIV. PRAC. & REM.CODE §§ 101.021, 101.025. White contends that section 101.021 provides that waiver. Id. § 101.021(1)(A). In considering whether the TNRCC has waived sovereign immunity in this case, we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.1993); see also Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex.2000).

A. Motor-Driven Equipment
The TNRCC first maintains that the trial court lacked jurisdiction because the pump used on White's land is not "motor-driven equipment." It bases this argument largely upon Schaefer, which it cites for the proposition that stationary electric motor-driven pumps do not fall within the meaning of section 101.021 "motor-driven equipment." See Schaefer, 838 S.W.2d at 693. White counters that the pump should indeed be considered "motor-driven equipment," citing 4 DG's Corp. v. City of Lockney, 853 S.W.2d 855, 857 (Tex.App.-Amarillo 1993, no writ). The Tort Claims Act does not define "motor-driven equipment." It provides only that:
"Motor-driven equipment" does not include:
(A) equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state; or
(B) medical equipment, such as iron lungs, located in hospitals.
TEX. CIV. PRAC. & REM.CODE § 101.001(4).
We hold that the pump is "motor-driven equipment" for two reasons. First, the pump falls within the generally accepted meaning of "motor-driven equipment." "Equipment," which is not specially defined either by the Tort Claims Act or an opinion of this Court, generally means "[t]he articles or implements used for a specific purpose or activity." BLACK'S LAW DICTIONARY 558 (7th ed.1999). "Motor-driven" means, quite simply, driven by a motor. The pump in this case was an implement used for the purpose of dissipating fumes. It was drivenor made to perform its taskby a motor. It therefore fits the general definition of "motor-driven equipment."
The Seventh Court of Appeals, in 4 DG's Corp., 853 S.W.2d at 857, followed this same reasoning. In that case, the owner of a house near a governmental unit's sewage-removal pumps sued the governmental unit when a power outage caused the pumps to fail. Id. at 856. Sewage backed up into the owner's house, and the owner *869 alleged that an employee of the governmental unit negligently failed to determine whether the pumps were operable after the power stopped. Id. The court of appeals reversed the trial court's summary judgment for the governmental unit based on sovereign immunity, reasoning that the sewage pumps, which were "energized by motors, and ... used in the city's operation of its sanitary sewer system," could fit within the meaning of "motor-driven equipment." Id. at 857. This construction of "motor-driven equipment" comports with the words' common-sense, plain-language meaning.
Second, section 101.021's inclusion of both "motor-driven equipment" and "a motor-driven vehicle" convinces us that the TNRCC's limited interpretation is overly restrictive. The TNRCC argues that Schaefer, which noted that all the reported "motor-driven equipment" cases at that time dealt with motor-driven vehicles capable of transporting people, Schaefer, 838 S.W.2d at 692, construed "motor-driven equipment" correctly. But if the Legislature had meant "motor-driven equipment" to encompass only motor-driven vehicles, it surely would not have written both "motor-driven vehicle" and "motor-driven equipment" into the Act. We therefore disapprove of Schaefer to the extent it holds otherwise. We conclude that the TNRCC's stationary electric motor-driven pump is within the scope of section 101.021's "motor-driven equipment."

B. Operation or Use
The TNRCC also argues that, even if the pump is "motor-driven equipment," White's injury was not caused by the pump's "operation or use." White, the TNRCC submits, contends only that the TNRCC's failure to use the pump caused the fire. Such non-use, the TNRCC argues, is outside the meaning of section 101.021's "operation or use." White responds that the TNRCC's operation and removal of the pump was negligent use rather than non-use. She argues that there is a difference between negligently ceasing use of equipment and never using it in the first place, and that the TNRCC's operation and subsequent removal of the pump was negligent use.
Section 101.021 provides that a governmental unit is liable for property damage arising "from the operation or use of ... motor-driven equipment." TEX. CIV. PRAC. & REM.CODE § 101.021(1)(A). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg, 766 S.W.2d 208, 211 (Tex.1989); see also LeLeaux v. Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51 (Tex.1992). In addition, the equipment's use must have actually caused the injury. Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 342-43 (Tex.1998).
Therefore, to invoke the Tort Claims Act's waiver of immunity, White's injury must have been caused by the TNRCC's actual use of the pump, not the TNRCC's failure to use it. See Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 584-85 (Tex. 1996). This Court has never held that non-use of property can support a claim under the Texas Tort Claims Act.[2]Id. at 584; Kassen v. Hatley, 887 S.W.2d 4, 14 (Tex.1994). We have refused to broaden section 101.021's waiver provision to include both use and non-use because doing so "would be tantamount to abolishing governmental *870 immunity, contrary to the limited waiver the Legislature clearly intended." Kerrville, 923 S.W.2d at 585.
White contends that: (1) the TNRCC installed a motor-driven pump on her property to dissipate gasoline vapors; (2) the TNRCC later removed the pump; and (3) after the pump was removed, gasoline vapors ignited on White's property and caused a fire that destroyed her store. Even if true, these contentions do not assert that the pump's "operation or use" caused the fire. White argues that the TRNCC should have continued to use the pump, and that its failure to do so caused her injury. The pump was not in usenor was it even presenton her property when the fire began. Accordingly, White asserts only non-use, which does not meet section 101.021's "use" requirement. See id. at 584-85; Kassen, 887 S.W.2d at 14.
Alternatively, White argues in her briefs to this Court that the pump's use or operation caused an aggregation of fumes on her property and, but for this aggregation, there would never have been enough fumes to cause the fire. In other words, she contends that the pump's operation or userather than its removal from use caused her property damage, and there was simply a delay between the pump's fire-causing use and the fire itself. This argument is not supported by the factual allegations in the pleadings or by extrinsic evidence in the record. Moreover, White raised this argument for the first time in her briefs here. Consequently, we will not consider it because it relies on factual assertions that appear solely in briefs to this Court and were not before the trial court. See Perry v. S.N., 973 S.W.2d 301, 303 (Tex.1998). Thus, White has not asserted that the TNRCC's "use" of motor-driven equipment proximately caused her injury. Accordingly, the TNRCC's sovereign immunity is not waived and the trial court lacks subject matter jurisdiction.

* * * * *
In sum, we have jurisdiction to decide this case based on a conflict in the courts of appeals about the meaning of "motor-driven equipment" in Tort Claims Act section 101.021. We hold that the TNRCC's stationary motor-driven pump is "motor-driven equipment," but because White failed to assert that its "use" caused her injury, she failed to demonstrate that the trial court had jurisdiction to hear her case. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the case for lack of subject matter jurisdiction.
Justice O'NEILL, dissenting.
The issues this case raises are specialized, but important, and I understand the Court's interest in addressing them. Our jurisdiction, however, does not extend to every case in which we have an interest, or even to every case in which we believe the court of appeals erred. In this interlocutory appeal, we have jurisdiction to review the court of appeals' decision only if it directly conflicts with a decision of this Court or of another court of appeals. See TEX. GOV'T CODE §§ 22.225(b)(3), (c); Resendez v. Johnson, ___ S.W.3d ___, 2000 WL 33114428 (Tex.2001). Upon closer inspection, the conflict upon which the Court bases its jurisdiction is no conflict at all. Because I would dismiss this petition for want of jurisdiction, I respectfully dissent.
As the Court notes, a conflict exists only when the court of appeals' decision is irreconcilable with the decision in another case such that one would overrule the other. See Coastal Corp. v. Garza, 979 S.W.2d 318, 319-20 (Tex.1998). To exercise conflicts jurisdiction, the rulings in the *871 two cases must be "`so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other.'" Id. at 319 (quoting Gonzalez v. Avalos, 907 S.W.2d 443, 444 (Tex.1995)). The Court reads the court of appeals' decision in this case to conflict with Schaefer v. City of San Antonio, 838 S.W.2d 688 (Tex. App.-San Antonio 1992, no writ). But the court below considered Schaefer and concluded that the decisions do not conflict. 13 S.W.3d 819, 826 n. 3. Because of the procedural and factual differences between the two cases, I agree.
In this case, the court of appeals had to decide whether White's petition alleged facts placing her claim within the Texas Tort Claims Act's limited waiver of sovereign immunity. 13 S.W.3d at 822-23. The court held that the pump the governmental defendant used to move gasoline vapors away from a leak might or might not qualify as "motor-driven equipment" under the Act, depending upon further factual development:
At this early stage of the proceedings, we are reluctant to hold White accountable for knowing precisely what sort of equipment TNRCC used at the time. Considering the elastic definition of "equipment," and the early stage of the proceeding, we conclude that White has alleged sufficient facts to establish that TNRCC's pump was "motor-driven equipment" as that term is used in the act. If after discovery the fact-finder determines that the pump was not motor-driven equipment, TNRCC would be able to reassert its immunity defense....
13 S.W.3d at 826.
The court's decision simply upheld the trial court's order denying TNRCC's motion for summary judgment, allowing White to develop facts showing the precise type of equipment the defendant actually used. The court noted the importance of the case's procedural posture in distinguishing its holding from Schaefer's, in which the court considered the question after a full bench trial on the merits. 13 S.W.3d at 826 n. 3. This same type of distinction formed the basis upon which we found no conflicts jurisdiction in Resendez, ___ S.W.3d at ___, 2000 WL 33114428. The Court fails to account for this distinction, even though the appeals court considered "the procedural posture of the case [to be] significant." 13 S.W.3d at 827. I, too, consider this procedural distinction to be significant. Ignoring it requires the Court to take a categorical approach that is unwise and unnecessary, as demonstrated by applying its holding to the facts presented in Schaefer.
In Schaefer, the plaintiff's home was damaged by a water leak from a broken water pipe across the street. At trial, a claims adjuster with the San Antonio Water Board testified that electric motor-driven pumps propel water through the city's water mains, thus maintaining a constant water pressure throughout the city's water system. The plaintiff claimed that these pumps qualified as "motor-driven equipment" under the Texas Tort Claims Act, but the trial court found that the water leak did not arise from the use of motor-driven equipment as contemplated by the Act. Schaefer, 838 S.W.2d at 690. The court of appeals affirmed, holding that "controlling water pressure by use of the electric motor-driven water pumps is not operating or using motor-driven equipment within the meaning of the Act...." Id. at 693. Thus, the court's holding was based on the pump's "operation or use" rather than its status as "motor-driven *872 equipment." Id. The court went on to question the propriety of considering any stationary electric pump to be motor-driven equipment, noting: "[T]he status of stationary electric motor-driven pumps as `motor-driven equipment' is questionable at best...." Id. But the court was sure that water pressure control, generally, was not an activity for which the Act waived immunity, and concluded that "the water pump in question is not `motor-driven equipment' for purposes of the Act." Id.
The Schaefer opinion is clearly limited to the type of pump at issue, the identity, location, and operation of which were fully factually developed. Id. at 689. The most expansive fair reading of Schaefer's holding would be that centrally-located electric pumps used to maintain water pressure in a city's water lines are not "motor-driven equipment" within the Act's meaning. Schaefer says nothing about the type of pump involved in the present case, which was brought on-site to remove gasoline fumes, or about all pumps in general. If, as the Court says, White is correct and conflicts with Schaefer on this point, then Schaefer was wrongly decided and all stationary electric motor-driven pumps in a city's water works are, as a matter of law, "motor-driven equipment" under the Act. Indeed, the transmission of electricity over a power line would come within the Act's waiver under the Court's opinion, no matter how widespread or remote, as long as it is generated by a motor at the source.
I find no inconsistency between the Schaefer court's conclusion, upon a fully developed record, that the centrally-located pumps at the San Antonio Water Works are not "motor-driven equipment" under the Act, and the court of appeals' conclusion here that portable pumps used to remove gasoline vapors might prove to be "motor-driven equipment" upon further factual development.
Accordingly, I dissent.
NOTES
[1] See also 4 DG's Corp. v. City of Lockney, 853 S.W.2d 855, 857 (Tex.App.-Amarillo 1993, no writ) (holding that stationary motor-driven pumps can fall within the scope of section 101.021's "motor-driven equipment").
[2] Although Mount Pleasant, Bossley, Kerrville, and Kassen construe the word "use" in section 101.021(2) rather than 101.021(1), there is no reason to construe the word "use" differently in section 101.021(1).