Opinion filed May 3, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed May 3, 2007

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00124-CV

                                                    __________

 

               ECTOR COUNTY HOSPITAL DISTRICT D/B/A MEDICAL

                                     CENTER HOSPITAL,
Appellant

 

                                                             V.

 

                            SUSAN
SWINNEY, HEIR OF THE ESTATE

                                  OF
MARJORIE WILSON, Appellee

 



 

                                          On
Appeal from the 70th District Court

 

                                                           Ector County, Texas

 

                                                Trial
Court Cause No. A-118,902

 



 

                                              M
E M O R A N D U M   O P I N I O N








Susan
Swinney, as an heir of the estate of Marjorie Wilson, brought this survival
action based on negligence against Ector County Hospital District d/b/a Medical Center Hospital,
a governmental unit.[1]  Swinney seeks to recover damages relating to
injuries that Wilson received in a fall at Medical Center Hospital.  Medical
 Center Hospital
filed a plea to the jurisdiction and traditional and no-evidence motions for
summary judgment asserting that it was entitled to governmental immunity with
respect to Swinney=s claims.[2]  The trial court denied the plea to the jurisdiction
and the motions for summary judgment.  In
this interlocutory appeal, Medical
 Center Hospital
challenges the trial court=s order denying its plea to the
jurisdiction and its traditional and no-evidence motions for summary
judgment.  The issue on appeal is whether
Medical Center Hospital
waived its governmental immunity under the Texas Tort Claims Act.[3]  See Tex.
Civ. Prac. & Rem. Code Ann. ' 101.021(2) (Vernon 2005).  Because the evidence before the trial court
established Medical
 Center Hospital=s governmental immunity on Swinney=s claims, we reverse the trial court=s order and render judgment dismissing this
cause for want of jurisdiction.

                                                                    Background








On March
19, 2003, Marjorie Wilson fractured her left femur when she fell in one of the
X-ray rooms at Medical
 Center Hospital.  Wilson
passed away on September 15, 2003.  Wilson=s daughter, Swinney, brought this survival
action against Medical
 Center Hospital.  In her petition, Swinney alleged that Wilson=s March 19, 2003 fall occurred as a result
of Medical Center Hospital=s negligence.  Specifically, Swinney alleged that Heather
Hale and Saul Leyva B two radiology technology students who were
working in the radiology department B negligently allowed Wilson to fall while they were positioning
her to take a chest X-ray.  Swinney
further alleged that Shari Speed, an employee in Medical Center
 Hospital=s radiology department, was negligent in
failing to properly supervise Hale and Leyva. 
Based on the alleged negligent conduct of Speed, Hale, and Leyva,
Swinney sought to impose liability against Medical Center
 Hospital under a
respondeat superior theory.

Wilson
alleged that Medical Center Hospital
waived its governmental immunity under the Tort Claims Act because Wilson=s injuries arose from the use or misuse of
tangible personal property, including the radiology room, the X-ray machine, a
roller gurney, and a wall bucky. Medical
Center Hospital
filed a plea to the jurisdiction and traditional and no-evidence motions for
summary judgment asserting, among other things, that Wilson=s injury did not arise from the use or
misuse of tangible personal property. 
Therefore, Medical
 Center Hospital
asserted that there had been no waiver of its governmental immunity under the
Tort Claims Act.

The
trial court held a hearing on Medical
 Center Hospital=s plea to the jurisdiction and motions for
summary judgment.  Later, the trial court
entered an order denying the plea to the jurisdiction and the motions for
summary judgment.  As permitted by Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(8) (Vernon Supp. 2006), Medical Center Hospital
filed this interlocutory appeal from the trial court=s order.

                                                                  Issue
on Appeal

In its
sole issue on appeal, Medical Center Hospital
argues that there was no waiver of its governmental immunity based on the
following independent reasons: (1) Wilson=s injuries were not caused by the use or
misuse of tangible personal property and (2) Hale and Leyva were not employees
of Medical Center
Hospital when Wilson=s injury occurred.  Therefore, Medical Center
 Hospital asserts that the
trial court erred in denying its plea to the jurisdiction and its motions for
summary judgment.

                                                              Standard
of Review

Governmental
immunity from suit defeats a trial court=s subject-matter jurisdiction.  Tex.
Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225-26 (Tex.
2004); Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003); Ector
 County v Breedlove,
168 S.W.3d 864, 865 (Tex. App. B Eastland 2004, no pet.).  Therefore, governmental immunity is properly
asserted in a plea to the jurisdiction.  Miranda,
133 S.W.3d at 225-26; Tex. Dep=t of Transp. v. Jones, 8 S.W.3d 636, 637 (Tex. 1999). 
Whether a court has subject-matter jurisdiction is a legal question that
we review de novo.  Miranda, 133
S.W.3d at 226; Breedlove, 168 S.W.3d at 865.








The Tort
Claims Act provides a limited waiver of sovereign or governmental immunity,
allowing suits to be brought against governmental units only in certain,
narrowly defined circumstances.  Tex. Dep=t of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex.
2001); Breedlove, 168 S.W.3d at 865. 
A plaintiff must affirmatively demonstrate the court=s jurisdiction by alleging a valid waiver
of immunity.  Whitley, 104 S.W.3d
at 542; Miller, 51 S.W.3d at 587. 
To determine if the plaintiff has met this burden, we look to the facts
alleged by the plaintiff and any evidence relevant to the jurisdictional
issue.  County
of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002); Tex.
Natural Res. Conservation Comm=n v. White, 46 S.W.3d 864, 868 (Tex. 2001); Breedlove, 168 S.W.3d at
865.  We construe the pleadings in the
plaintiff=s favor and look to the pleader=s intent. 
Brown, 80 S.W.3d at 555.

                                       Governmental
Immunity and the Tort Claims Act

Medical Center
Hospital, a governmental unit, is
immune from liability for Wilson=s injuries unless immunity is waived by the
Tort Claims Act.  Dallas
County Mental Health & Mental
Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex.
1998); City of La Porte v. Barfield, 898
S.W.2d 288, 291 (Tex.
1995).  As it pertains to this case, the
Tort Claims Act provides that a governmental unit is liable for personal injury
so caused by a condition or use of tangible personal property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.  Section 101.021;
Bossley, 968 S.W.2d at 343; Kerrville
State Hosp. v. Clark, 923 S.W.2d
582, 584 (Tex.
1996).  The Texas Supreme Court defines Ause@ as Ato put or bring [the property] into action
or service; to employ for or apply to a given purpose.@  San
Antonio State Hosp. v. Cowan, 128 S.W.3d 244, 246 (Tex. 2004). 
The Texas Supreme Court has interpreted Section 101.021(2) to require
that the governmental employee Ause@ the tangible personal property.  Id.


                                                                   The
Evidence








Medical Center
 Hospital submitted excerpts from the depositions of
Swinney, Hale, Leyva, and Speed in support of its plea to the jurisdiction and
its traditional and no-evidence motions for summary judgment.  Swinney submitted excerpts from the
depositions of Speed, Hale, and Leyva and an excerpt from her deposition in
response to Medical
 Center Hospital=s plea to the jurisdiction and motions for
summary judgment.  As required by the
standard of review set forth above, we consider the evidence submitted by the
parties to the extent it is relevant to the jurisdictional issue.  Brown, 80 S.W.3d at 555; White,
46 S.W.3d at 868.       

            The
evidence establishes that Wilson was a patient at Regency Hospital,
a long-term facility. Regency Hospital and Medical Center
 Hospital were located in
the same building.  On March 19, 2003, Wilson=s
physician ordered chest X-rays for Wilson.  Wilson was
transported from Regency Hospital to Medical Center
 Hospital=s radiology department on a rolling
stretcher, also referred to as a gurney. 
At that time, Hale and Leyva, two Odessa
College radiology technology students,
were working in Medical
 Center Hospital=s radiology department.  Wilson
remained on the stretcher, and Hale wheeled the stretcher into X-ray Room No.
6.  Leyva accompanied Hale and Wilson
into the X-ray room.

The record shows that chest X-rays may be
performed while a patient is standing up or, if a patient is unable to stand, a
portable X-ray machine may be used to perform the X-ray while the patient is in
bed or on a stretcher.  Speed testified
that, during a stand-up X-ray, the patients hang on to the X-ray equipment on
each side.  Hale and Leyva planned to
take two chest X-rays of Wilson. Hale testified that she asked Wilson whether she was able to stand.  Hale said Wilson responded that she was able to stand
but that she could not stand for long. 
Hale testified that she then asked Wilson
if she could stand for one X-ray, sit down and rest for a while, and then do a
second X-ray.  Hale said that Wilson said, AYes.@  Leyva testified that he and Hale made the
decision to perform a stand-up X-ray of Wilson because Wilson said she was able to stand.  Leyva said that he and Hale were following
the doctor=s orders
in performing the stand-up X-ray.  He
also said that they could have taken a mobile X-ray of Wilson at Regency
Hospital with a portable X-ray machine had the doctor ordered a mobile X-ray.








            Hale and Leyva positioned the stretcher next to the X-ray
equipment (wall bucky) located on the wall. 
Hale and Leyva assisted Wilson off of the
stretcher and also assisted Wilson
in walking toward the wall bucky.  Leyva
was on Wilson=s
left side, and Hale was on Wilson=s right side.  After taking three or four steps toward the
wall bucky with Hale and Leyva supporting her, Wilson stated, AI
am going to blackout.@  Wilson
collapsed and lost consciousness, and Leyva attempted to hold her up by locking
his arms underneath her arms.  At the
same time, Leyva requested Hale to move the stretcher closer to Wilson and him.  Hale and Leyva yelled for help.  Leyva testified that Wilson became dead weight and that he could
not lift her up onto the stretcher. 
Leyva said that, because of Wilson=s weight, he was unable to hold her up
and that, therefore, he slowly lowered her to the ground.

Speed and two students, Juan Ramirez and Mark
Blackmon, entered the room to assist Hale and Leyva with Wilson. 
Hale, Leyva, Speed, Ramirez, and Blackmon lifted Wilson off of the floor and put her onto the
stretcher.  Wilson regained consciousness and said, AOh, my leg.@  An X-ray of Wilson=s
leg showed that it was fractured.

                                                                        Analysis

Swinney contends that Wilson=s injuries were caused by Medical Center Hospital=s negligent use or misuse of the
following tangible personal property: the radiology room, the X-ray machine,
the roller gurney, and the wall bucky. 
Swinney asserts that Medical Center Hospital
misused the wall bucky in attempting to perform a stand-up X-ray because the
handles on the wall bucky were not used when Wilson was placed into position for the
X-ray.








Merely asserting that some form of tangible
personal property was involved is not sufficient to demonstrate a waiver of
immunity.  Bossley, 968 S.W.2d at
342-43.  Rather, to establish a waiver of
immunity, the use or misuse of the tangible personal property must have
proximately caused the personal injury.  Id.  The evidence relevant to the jurisdictional
issue in this cause establishes that Wilson=s injuries were not caused by the use
or misuse of tangible personal property. 
The evidence shows that Wilson,
with the assistance of Hale and Leyva, was walking toward the X-ray equipment
that was located on the wall.  Wilson lost consciousness
as she approached the X-ray equipment. 
She had not reached the wall bucky and was not in position for an X-ray
to be taken when she lost consciousness. 
The X-ray equipment was not in use when Wilson lost consciousness or when Leyva
lowered her to the floor.  Thus, Hale and
Leyva were not using the X-ray equipment when Wilson was injured.  Therefore, Wilson=s
injuries were not caused by a use or misuse of tangible personal property.[4]  Additionally, even assuming that Hale and
Leyva were using the X-ray equipment at the time of the incident, there is no
evidence that the use of the equipment caused Wilson=s
loss of consciousness and resulting injuries.             

Swinney asserts that Medical
Center Hospital
conducted a stand-up X-ray of Wilson even though it knew or should have known
that Wilson was
a high-fall risk.  Swinney contends that Medical Center
Hospital misused the radiology room by
failing to use a portable or mobile X-ray machine to x-ray Wilson from a sitting or lying position on
the gurney.  However, claims involving
the failure to use property or the non-use of property cannot support a waiver
of immunity under the Tort Claims Act.  Miller,
51 S.W.3d at 587; White, 46 S.W.3d at 869-70; Gainesville Mem=l Hosp. v. Tomlinson, 48 S.W.3d
511, 514 (Tex. App.CFort
Worth 2001, pet. denied).  Therefore,
Swinney=s claims
concerning Medical
 Center Hospital=s failure to use the gurney and a
portable or mobile X-ray machine cannot establish a waiver of immunity under
Section 101.021(2) of the Tort Claims Act.

Swinney relies on Huckabay v. Irving Hosp.
Found., 802 S.W.2d 758 (Tex. App.C
Dallas 1990, writ denied).  In Huckabay,
plaintiffs Roy and Lucille Huckabay sued the hospital, a governmental unit, for
injuries that Roy
had received at the hospital.  Id. at 760.  One of the issues before the Huckabay
court was whether the plaintiffs=
allegations demonstrated a waiver of immunity under Section 101.021(2) of the
Tort Claims Act.  Id.  The plaintiffs alleged that Roy went to the hospital for a chest X-ray and that, as
instructed, Roy
placed himself up against the X-ray machine. 
The plaintiffs also alleged that an X-ray technician walked up to Roy
and that the technician, instead of adjusting Roy to a preferable position to
take the X-ray, Ashoved
[Roy] up against the X-ray apparatus with such force that it separated [Roy=s] recently reattached sternum.@ 
Id.  The Huckabay court held that the X-ray
technician=s
manipulation of Roy
in positioning him against the screen for taking the X-ray was part of the use
of the X-ray machine.  Id. 
Therefore, the court stated that the plaintiffs=
petition alleged a cause of action for the misuse of tangible personal property.
 Id. 








This cause is distinguishable from Huckabay.  In this cause, Hale and Leyva were not
manipulating or positioning Wilson
onto or against the X-ray equipment when she received her injuries.  Rather, Wilson
was injured and lost consciousness as she walked from the gurney toward the
X-ray equipment on the wall.  Hale and
Leyva were not using the gurney or the X-ray equipment at the time of the
incident.  Thus, even if correctly
decided, Huckabay does not support Swinney=s
claim that Medical
 Center Hospital
waived its governmental immunity in this cause.

Because Wilson=s injuries were not caused by the use
or misuse of tangible personal property, there was no waiver of Medical Center Hospital=s governmental immunity.  Therefore, the trial court erred in denying Medical Center Hospital=s plea to the jurisdiction and its
motions for summary judgment.  We sustain
Medical Center Hospital=s issue.  Based on our holding, we need not address Medical Center
Hospital=s
alternative contention that there was no waiver of its governmental immunity
because Hale and Leyva were not employees of Medical
Center Hospital
when Wilson=s injury occurred.  Tex.
R. App. P. 47.1.

                                                               This
Court=s Ruling

We reverse the trial court=s
order denying Medical
 Center Hospital=s plea to the jurisdiction and motions
for summary judgment, and we render judgment dismissing this cause with prejudice.

 

 

TERRY McCALL

JUSTICE

 

May 3, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]Swinney also named Regency Hospital Company of Odessa, LLC, as a
defendant in this cause. [2-3] Swinney settled her claims against Regency Hospital,
and the trial court entered an order dismissing Swinney=s claims against Regency Hospital
with prejudice.





[2]Medical Center Hospital asserted that there had been no waiver of sovereign immunity in its
plea to the jurisdiction and motions for summary judgment.  Sovereign immunity refers to the State=s immunity from suit and liability.  Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 694 n.3 (Tex.
2003).  It protects the State and various
divisions of state government from liability. 
Id.  Governmental immunity, on the other hand,
protects political subdivisions of the State, including counties, cities, and
school districts.  Id.





[3]Tex. Civ. Prac. & Rem.
Code Ann. ''
101.001-.109 (Vernon 2005).





[4]Speed testified that Wilson fainted and her injury occurred after
Hale and Leyva took a chest X-ray.  The
excerpts from the depositions of Hale and Leyva that are in the record do not
indicate that Hale and Leyva took an X-ray before Wilson fainted or lost consciousness.  Hale=s and
Leyva=s testimony establishes that Wilson lost consciousness as she approached
the X-ray equipment. Whether Wilson
was approaching the X-ray equipment for the first time or the second time, the
equipment was not being used when she was injured.  Under either scenario, Wilson=s
injuries were not caused by a use or misuse of the X-ray equipment.