

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-08-263-CV

JOHN MCDONALD AND                                   APPELLANTS
CHERYL MCDONALD, INDIVIDUALLY
AND AS NEXT FRIEND FOR
MINOR PATRICK TUCKER MCDONALD

V.

CITY OF THE COLONY, TEXAS                           APPELLEE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This is an interlocutory appeal by Appellants John McDonald and Cheryl

McDonald, individually and as next friend for minor Patrick Tucker McDonald,

from the trial court's order partially granting Appellee the City of The Colony,

Texas's plea to the jurisdiction.  *See* Tex. Civ. Prac. & Rem. Code Ann. §

---

[1] *See* Tex. R. App. P. 47.4.

51.014(a)(8) (Vernon 2008). The McDonalds raise four issues on appeal. For the reasons discussed below, we hold that the McDonalds invoked the trial court's subject matter jurisdiction regarding their negligence claims for use of motor-driven equipment and regarding their premises defect claim by alleging facts and presenting jurisdictional evidence establishing a waiver of the City's governmental immunity pursuant to the Texas Tort Claims Act (the TTCA).[2] We also hold that the McDonalds invoked the trial court's subject matter jurisdiction regarding their nuisance claim by alleging facts and presenting jurisdictional evidence establishing a waiver of the City's governmental immunity for a nuisance rising to the level of an unconstitutional taking.[3] We further hold that the facts pleaded by the McDonalds and the jurisdictional evidence presented to the trial court did not raise a fact question concerning the trial court's subject matter jurisdiction over their negligence claims for use of tangible personal property or for use of motor-driven vehicle or over their breach of warranty claims. Consequently, we will affirm in part and reverse in part the trial court's order on the City's plea to the jurisdiction.[4]

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.021, .023–.109 (Vernon 2005); § 101.022 (Vernon Supp. 2008).

[3] *See* Tex. Const. art. I, § 17.

[4] We rely on the pleadings and the relevant jurisdictional evidence in the record to support our holding. Our holding today is limited to our review of the

## II. FACTUAL AND PROCEDURAL BACKGROUND

The City leased to Club Fore Sports Center a tract of land for the construction and operation of a golf driving range and public recreation facility (the "Golf Center"). Appellant John McDonald subsequently purchased the Golf Center business and assumed the lease of the premises pursuant to a written assignment.

The City owns and operates a wastewater lift station on a portion of the leased premises as part of its wastewater collection system. The lift station is located on the east side of the leased premises and is surrounded by a chain link fence with a gated entrance. The lift station uses motor-driven equipment to pump raw sewage uphill from the low-lying area where the station is located to another part of the sewage system located on adjacent land owned by the City. It was designed to accommodate four submersible pumps. When the McDonalds filed suit in May 2007, two of the four submersible pumps were damaged beyond repair and no longer in operation and one of the two operational pumps was "assumed to be offline in order to meet the [Texas Commission on Environmental Quality] TCEQ requirements." Thus, the

record at this early stage of the proceedings. The outcome of any summary judgment or any other future proceedings may vary depending on the development of any additional evidence.

operating capacity of the lift station was limited to 3.5 million gallons per day (MGD) (the operating capacity of the single online operational pump), although the station was operating at an estimated capacity of 5.0 MGD.

Wastewater enters the lift station through an influent box that was designed to include a mechanical bar screen. The mechanical bar screen uses a conveyor belt system to remove any large objects that enter the lift station with the wastewater flows. The mechanical bar screen protects the pumps from those large objects and is required for the reasonable and safe use of the pumps. Due to frequent mechanical and maintenance problems with the mechanical bar screen, the City removed it around October 2006, which left the influent box and the underground motors and pumps exposed. The City covered the opening with a metal cover "to prevent malodorous gases from escaping."

In September 2006, the McDonalds learned that the lift station was emitting harmful hydrogen sulfide gas ($H_2S$). Mr. McDonald contacted the TCEQ, complaining of headaches, nausea, dizziness, eye and throat irritation, and corneal opacity. The TCEQ took air quality samples from the lift station, and on September 29, 2006, it issued a report that $H_2S$ concentrations from these samples were "within range to cause the symptoms that Mr. McDonald [was] experiencing." Specifically, the TCEQ reported that "[o]f the 73 samples

4

that were taken, 36 were well above the residential, recreational, business or commercial regulation 30-minute standard of 0.08 ppm,"[5] and it "strongly recommend[ed]" that actions be taken to reduce exposure to $H_2S$. Mr. McDonald also hired Green Star Environmental to follow up with independent air quality tests, and these tests revealed that the lift station was emitting $H_2S$ in excess of nationally prescribed reporting limits.

Mr. McDonald closed the Golf Center in October 2006 because of the harmful gas emissions. In May 2007, the McDonalds filed suit against the City, asserting claims for nuisance, breach of contract, inverse condemnation, breach of warranty, negligence, gross negligence, and negligence per se. They twice amended their petition to include causes of action for premises defect and fraud and to seek injunctive relief. In addition to claims based on the City's operation of the lift station, the McDonalds also alleged that the City drove large vehicles and back hoes over the grassy areas of the Golf Center, creating deep, muddy ruts on the leased premises and damaging the golf greens and sprinkler system.

---

[5] *See* 30 Tex. Admin. Code § 112.31 (2008) (Tex. Comm. Envtl. Quality, Allowable Emissions--Residential, Bus., or Commercial Prop.) (prohibiting emissions of $H_2S$ over 0.08 ppm averaged over any 30-minute period if the downwind concentration of $H_2S$ affects property used for residential, business, or commercial purposes).

The City filed a plea to the jurisdiction, asserting that it was immune from suit. The McDonalds filed a response to the City's plea and attached as evidence an affidavit of John McDonald, the agreement between the City and Club Fore Sports Center and various assignments of that agreement, the TCEQ report, and a laboratory report from Green Star Environmental's air quality testing around the lift station. In a supplemental response to the City's plea to the jurisdiction, the McDonalds attached a seventy-page preliminary design report dated June 25, 2007 (the "Preliminary Report"), which was prepared at the City's request by a third-party engineering firm and which explained the condition of the lift station and recommended certain improvements to it.

After a hearing on the City's plea, the trial court orally granted the City's plea regarding all of the McDonalds's claims except for their breach of contract and inverse condemnation claims. In June 2008, after hearing the McDonalds's motion for reconsideration, the court entered a written order granting the City's plea to the jurisdiction with regard to the McDonalds's causes of action for nuisance, breach of warranty, negligence, gross negligence, negligence per se, premises defect, and pure takings.[6] It denied the plea with regard to the

---

[6] The McDonalds appeal the trial court's order granting the City's plea on all of these causes of action except for their pure takings claim, which they specifically do not appeal. We utilize the term "pure takings" to distinguish this claim from the McDonalds's nuisance-rising-to-the-level-of-an-unconstitutional-

6

McDonalds's breach of contract and inverse condemnation claims. The McDonalds timely perfected an appeal to this court.

## III. STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has subject matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The determination of whether a trial court has subject matter jurisdiction begins with the pleadings. *Miranda*, 133 S.W.3d at 226. The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.—Fort Worth 2003, pet. denied). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the

taking claim. These claims were pleaded separately and ruled on by the trial court separately.

7

pleadings. *See Miranda*, 133 S.W.3d at 226, 228; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.—Fort Worth 2004, pet. denied).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (confining the evidentiary review to evidence that is relevant to the jurisdictional issue).

If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227–28; *Bland*, 34 S.W.3d at 555. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 227–28; *Bland*, 34 S.W.3d at 555. This standard mirrors our review of summary judgments, and we therefore take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *City of El Paso v. Heinrich*, No. 06-0778, 2009 WL 1165306, at *9 (Tex. May 1, 2009) (citing *Miranda*, 133 S.W.3d at 228).

## IV. GOVERNMENTAL IMMUNITY

In their first issue, the McDonalds argue that the trial court erred by granting the City's plea to the jurisdiction on their claims for negligence, gross negligence, negligence per se, premises defect, nuisance, and breach of warranty. In their second issue, the McDonalds argue that the trial court ignored the undisputed evidence in granting the City's plea to the jurisdiction on the grounds challenged in their first issue. They do not address specific portions of the record. We liberally construe this issue as part of the McDonalds's first issue challenging the trial court's order granting the City's plea to the jurisdiction, and we address it in connection with their first issue. We address each of the McDonalds's arguments under their first and second issues below.

### A. GOVERNMENTAL IMMUNITY AND THE TTCA

Generally, governmental units are immune from suit unless the legislature expressly consented to the suit. *Jones*, 8 S.W.3d at 638; *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997), *superceded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little-Tex. Insulation Co.*, 39 S.W.3d. 591, 593 (Tex. 2001). Governmental immunity only applies to a city's governmental functions. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). Thus, if a city is engaged in a proprietary function, the city is liable to

9

the same extent as a private entity or individual. *Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 993 (1949); *see also Tooke*, 197 S.W.3d at 343 ("A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions."). Conversely, a municipality engaged in a function defined by the Legislature to be governmental is entitled to governmental immunity provided that the Texas Legislature has not otherwise authorized a waiver of this immunity. *See City of Houston v. Clear Channel Outdoor, Inc.*, 161 S.W.3d 3, 6 (Tex. App.—Houston [14th Dist.] 2004), *rev'd on other grounds*, 197 S.W.3d 386 (Tex. 2006).

The legislature gave such consent and granted a limited waiver of immunity in the TTCA, which permits suits to be brought against governmental units in certain narrowly-defined circumstances. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *see also Dallas County MHMR v. Bossley*, 968 S.W.2d 339, 341 (Tex.), *cert. denied*, 525 U.S. 1017 (1998). The TTCA provides that a governmental unit is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

10

> (B)  the employee would be personally liable to the claimant according to Texas law; and

> (2)  personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

A plaintiff must plead facts sufficient to invoke a waiver of governmental immunity under the TTCA. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Univ. of N. Tex.*, 124 S.W.3d at 222. We must look to the terms of the TTCA and then determine whether the liability theories pleaded, the facts pleaded, and the jurisdictional evidence presented demonstrate a claim falling within the TTCA's waiver of immunity. *Univ. of N. Tex.*, 124 S.W.3d at 222.

### B. Governmental or Proprietary Function under the TTCA

A municipality's governmental functions are "'in the performance of purely governmental matters solely for the public benefit.'" *Tooke*, 197 S.W.3d at 343 (citations omitted). For purposes of tort liability, the Legislature has statutorily included "garbage and solid waste removal, collection, and disposal" and water and sewer services in a nonexclusive list of governmental functions. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(6), (32). Thus, a municipality may be held liable in tort for damages caused in the carrying out of these

11

functions only if the plaintiff pleads facts sufficient to invoke a waiver of municipality's governmental immunity under the TTCA. *See id.*; *Brown*, 80 S.W.3d at 555.

Here, all of the McDonalds's tort claims—specifically, their negligence, gross negligence, negligence per se, and premises defect claims—involve the City's operation of its wastewater collection system.[7] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(6), (32). Thus, these claims involve a governmental function and must fall within a statute that waives the City's immunity. *See id.*; *Tooke*, 197 S.W.3d at 343.

---

[7] On appeal, the McDonalds also argue that they pleaded a separate negligence cause of action against the City for damages sustained to the Golf Center's grounds after City employees drove City-owned trucks across the leased premises. The McDonalds allege in their brief to this court that they established a waiver of the City's governmental immunity for this negligence action pursuant to the use-of-motor-driven-vehicle exception to the TTCA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A). But under the factual background section of their third amended petition, the McDonalds pleaded only that "the intentional driving of large vehicles and City owned and operated back hoes over the Golf Center grassed areas creat[ed] large deep muddy ruts on the property" and alleged that this caused damage to the Golf Center's greens and sprinkler system. But nowhere in the petition did they plead a cause of action for negligence based on these factual allegations or plead that the City waived its governmental immunity for these actions based on the TTCA's use-of-motor-driven-vehicle exception. *See id.*; *Brown*, 80 S.W.3d at 555. Thus, we overrule that portion of the McDonalds's first issue challenging the trial court's order granting the City's plea to the jurisdiction on the McDonalds's negligence claims to the extent that those claims involve the City's use of motor-driven vehicles.

12

## C. Invocation of Trial Court's Subject Matter Jurisdiction over Negligence Claims for Use of Motor-Driven Equipment

The McDonalds relied in part on the TTCA's use-of-motor-driven-equipment exception to support their negligence claims. The McDonalds alleged that the lift station pumps were "motor-driven equipment," that the City negligently used these pumps by operating them over capacity and without a mechanical bar screen, and that this use produced harmful $H_2S$ emissions, which caused property damage and personal injury to the McDonalds. The City contends that the McDonalds's claims involve the City's non-use of the mechanical bar screen, which does not satisfy the "use-of-property" requirement of the TTCA, and that the McDonalds have not pleaded or provided evidence of a causal link between the operation of the motor-driven equipment and their damages.[8]

---

[8] The City also contends that the McDonalds's claims must fail because they did not plead or provide evidence "that any employees would be personally liable to them under Texas law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(B); *see also DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995) (holding that if governmental employee is protected from liability by official immunity, then governmental unit is likewise immune from liability under section 101.021(1)). But contrary to the City's contention, the McDonalds specifically alleged that their negligence claims involve "personal injury and property damage caused by the negligent operation or use of *motor-driven equipment* by Defendant's employee(s), and the employee(s) would be liable to Plaintiff under Texas law." Thus, we hold that the McDonalds's pleadings were sufficient to allege that a City employee would be personally liable to them under Texas law as required by section 101.021(1). *See Miranda*, 133 S.W.3d

### 1. Motor-Driven Equipment

Stationary electric motor-driven pumps fall within the meaning of "motor-driven equipment" for purposes of the TTCA. *See, e.g., Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) ("'Motor-driven' means, quite simply, driven by a motor. The pump in this case was an implement used for the purpose of dissipating fumes. It was driven—or made to perform its task—by a motor. It therefore fits the general definition of 'motor-driven equipment.'"); *Floyd*, 150 S.W.3d at 228 ("The lift station's pumps are motor driven, and thus fall within the generic definition of the Code."); *4 DG's Corp. v. City of Lockney*, 853 S.W.2d 855, 857 (Tex. App.—Amarillo 1993, no writ) (holding that sewage pumps that were "'energized by motors, and . . . used in the city's operation of its sanitary sewer system'" were motor-driven equipment under the TTCA).

The McDonalds's pleadings and the evidence in the record demonstrate that the lift station uses motor-driven pumps to pump raw sewage uphill. Thus, we hold that the McDonalds established that the pumps in question were motor-driven equipment within the scope of section 101.021(1). *See White*, 46 S.W.3d at 868–69; *Floyd*, 150 S.W.3d at 228.

---

at 226; *Floyd*, 150 S.W.3d at 228.

## 2. Use or Non-use

In the context of a waiver of immunity under section 101.021(1) of the TTCA, the term "'use' means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *White*, 46 S.W.3d at 869; *4 DG's Corp.*, 853 S.W.2d at 857. The use of the equipment must have actually caused the injury for the waiver in section 101.021(1) to apply. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(a); *White*, 46 S.W.3d at 869.

Here, the City contends that the McDonalds alleged only that the City failed to use the mechanical bar screen and that this non-use does not fall within the TTCA's waiver of immunity. To invoke the TTCA's waiver of immunity, the McDonalds's pleadings and evidence in the record must have raised at least a fact issue regarding whether the City's actual use of the pumps—rather than non-use of the mechanical bar screen—has caused their injuries and property damage. *See Miranda*, 133 S.W.3d at 228; *White*, 46 S.W.3d at 869 (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584–85 (Tex. 1996)).

The McDonalds did allege more than mere non-use of the mechanical bar screen. *See White*, 46 S.W.3d at 869; *see also Miranda*, 133 S.W.3d at 228 (requiring a liberal construction of the allegations in the petition). Their petition specifically alleged that (1) the lift station's "motor[-]driven equipment has not

15

been properly serviced, maintained and/or operated and has been negligently used over the time periods relevant to the claims made in this suit," (2) the City has had "actual knowledge that the lift station has been operating outside of its operational limits and capacities for some time due to the condition and age of its existing motor driven pumps but the City still continues its intentional, negligent and harmful operation of this motor[-]driven equipment," and (3) "[b]ecause the lift station is operating beyond its designed and intended capacity, the lift station is emitting illegal and harmful levels of $H_2S$ and likely other toxic fumes and substances."

Additionally, the evidence submitted by the McDonalds—specifically, the TCEQ report and the Preliminary Report—also established that one or both of the operable pumps did not meet TCEQ design standards and that even after the TCEQ recommended immediate action be taken to reduce $H_2S$ levels, the City continued using the same pumps at the lift station. Viewing the pleadings and evidence in the light most favorable to the McDonalds, we hold that the pleadings and evidence established "use" of motor-driven equipment sufficient to fall within the TTCA's waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1); *White*, 46 S.W.3d at 869.

16

### 3. Proximate Cause

In addition to the "use" requirement, the TTCA requires that the plaintiffs's injuries be "proximately caused" by the operation or use of the motor-driven equipment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). Proximate cause consists of cause-in-fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *Brittain*, 268 S.W.3d at 807. To establish cause-in-fact, or "but for" causation, a party must show that the defendant's negligence was a substantial factor in bringing about the party's injury without which no harm would have been incurred. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45–46 (Tex. 2007); *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002); *Brittain*, 268 S.W.3d at 807.

In this case, the McDonalds alleged that the "operation and use of the lift station's underground motors in a manner which caused the lift station to emit toxic fumes and illegal levels of hydrogen sulfide that are known to cause injury to humans constitutes negligence." They further alleged that Mr. McDonald and his minor son have experienced health problems and physical injuries as a result of their exposure to $H_2S$ and that they were unable to continue operating the Golf Center due to these emissions. The TCEQ report provided as jurisdictional evidence by the McDonalds also confirms that $H_2S$ emissions around the lift station exceeded the statutory maximum and that these

17

emissions were capable of causing the symptoms complained of by Mr. McDonald.

Thus, after considering the McDonalds's pleadings and the relevant jurisdictional evidence, taking as true all evidence favorable to the McDonalds and indulging every reasonable inference and resolving all doubts in their favor, we hold that the pleadings and the evidence sufficiently invoke a waiver of the City's governmental immunity regarding the McDonalds's negligence claims for use of motor-driven equipment—specifically, the City's operation of the lift station with one motor-driven pump in excess of the station's operating capacity.[9] *See Miranda*, 133 S.W.3d at 227–28; *Bland*, 34 S.W.3d at 555. Consequently, we hold that the trial court erred by granting the City's plea to the jurisdiction on these negligence claims. *See Miranda*, 133 S.W.3d at 226. We sustain that portion of the McDonalds's first and second issues challenging the trial court's grant of the City's plea to the jurisdiction on their negligence, gross negligence,[10] and negligence per se[11] claims to the extent that the

---

[9] The Preliminary Report states that of the two operational submersible pumps, one was "assumed to be offline to meet the TCEQ requirements."

[10] Regarding the McDonalds's gross negligence claim, gross negligence differs from ordinary negligence in that a grossly negligent defendant must proceed with "conscious indifference," and his conduct must "involve an extreme degree of risk." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (Vernon 2008); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998) ("Evidence of simple negligence is not enough to prove either the objective or

18

McDonalds assert a waiver of governmental immunity based on use of motor-

driven equipment. But to the extent that the McDonalds assert a waiver of

governmental immunity based on non-use of the mechanical bar screen, we

---

subjective elements of gross negligence."); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex. 1985) (noting that gross negligence is established by evidence of the actor's mental state). As we explain in greater detail below, the McDonalds's pleadings and jurisdictional evidence establish that the City had actual knowledge that the lift station was producing harmful gases that were sufficient to cause the McDonalds's injuries and that the City continued to operate the lift station in its then-existing condition. *See infra*, p. 23, 30–32. Consequently, we hold that the McDonalds's pleadings and the relevant jurisdictional evidence indicated the required elevated mental state for gross negligence sufficient to invoke a waiver of the City's governmental immunity for those claims. *See Ellender*, 968 S.W.2d at 921; *see also Cobb v. Tex. Dep't of Criminal Justice*, 965 S.W.2d 59, 63 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding, in summary judgment case, that evidence that defendant knew of hazard but did not think it was serious enough to fix it created fact issue on gross negligence).

[11] The McDonalds based their negligence per se claim on a provision of the Texas Administrative Code that places limits on hydrogen sulfide emissions around property used for residential, business, or commercial purposes. *See* 30 Tex. Admin. Code § 112.31. The TCEQ report in the record established that the lift station produced emissions in excess of this statutory amount. *See id.* Here, the McDonalds relied on the TTCA's use-of-motor-driven-equipment exception as a basis for the City's waiver of immunity regarding their negligence per se claim. *See Guadalupe-Blanco River Auth. v. Pitonyak*, 84 S.W.3d 326, 344–45 (Tex. App.—Corpus Christi 2002, no pet.) (requiring plaintiffs to plead basis for waiver of immunity as part their negligence per se claim). Because we have held that the McDonalds invoked a waiver of the City's governmental immunity under the TTCA's use-of-motor-driven-equipment exception to, we also hold that this waiver applies to their negligence per se claims.

overrule their first and second issues. *See Miranda*, 133 S.W.3d at 228; *White*, 46 S.W.3d at 869.

### D. Invocation of Trial Court's Subject Matter Jurisdiction over Premises Defect Claim

The McDonalds also brought a premises defect claim under the TTCA based on the "the malfunctioning and/or misused equipment at the lift station."

A governmental unit's liability for a premises defect is implied under section 101.021(2) because a premises defect arises from a condition existing on real property. *Perez v. City of Dallas*, 180 S.W.3d 906, 910 (Tex. App.—Dallas 2005, no pet.) (citing *City of Midland v. Sullivan*, 33 S.W.3d 1, 6 (Tex. App.—El Paso 2000, pet. dism'd w.o.j.), and *Lamar Univ. v. Doe*, 971 S.W.2d 191, 195 (Tex. App.—Beaumont 1998, no pet.)); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). If the condition on real property giving rise to the waiver of immunity is a premises defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a)). However, if the claimant pays for the use of the premises, the governmental entity owes the claimant the duty owed to an invitee. *See* Tex. Civ. Prac. &

20

Rem. Code Ann. § 101.022(a); *Garcia v. State*, 817 S.W.2d 741, 742 (Tex. App.—San Antonio 1991, writ denied).

A landlord generally owes no duty to tenants or their invitees for dangerous conditions on the leased premises. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *see Strunk v. Belt Line Rd Realty Co..*, 225 S.W.3d 91, 99 (Tex. App.—El Paso 2005, no pet.). However, if the landlord retains possession or control of a portion of the leased premises, the landlord has a duty of ordinary care in maintaining the retained portion. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993); *Cadenhead v. Hatcher*, 13 S.W.3d 861, 863 (Tex. App.—Fort Worth 2000, no pet.). Thus, in a premises liability lawsuit involving a landlord-tenant relationship, if the tenant demonstrates that the landlord had possession or control of the premises in question, then the landlord owed a duty to the tenant as an invitee. *See Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 513–15 (Tex. 1978); *see also Palermo v. Bolivar Yacht Basin, Inc.*, 84 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (quoting Restatement (Second) of Torts Section 361 for proposition that lessor is liable for part of premises over which he retains control or "'any other part of the land the careful maintenance of which is essential to the safe use of the . . . portion of land leased to the various lessees'").

21

A plaintiff who is an invitee must establish that (1) a condition of the premises posed an unreasonable risk of harm to the plaintiff; (2) the owner knew or reasonably should have known of the defective condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) such failure was a proximate cause of injury to the invitee. *Payne*, 838 S.W.2d at 237. In other words, the lessor is liable for an injury caused by a premises defect if, by the exercise of reasonable care, the lessor could have discovered the condition and its unreasonable risk and then made the condition safe*. Shell Oil Co. v. Khan*, 138 S.W.3d 288, 296 (Tex. 2004). If the dangerous condition is open and obvious, or otherwise known to the tenant, this does not dispense with the lessor's duty, but merely presents a fact issue on proportionate responsibility. *Wilson v. Braeburn Presbyterian Church*, 244 S.W.3d 469, 471 (Tex. App.—Houston [14th Dist.] 2007, pet. filed) (citing *Parker*, 565 S.W.2d at 521).

In this case, the McDonalds alleged a premises defect on property that they paid to use—that is, on property owned by the City and leased to the McDonalds. Construing their pleadings liberally in their favor, they allege that the City owed them the duty owed to an invitee. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a); *Miranda*, 133 S.W.3d at 226, 228; *see also Davies*, 158 S.W.3d at 58 (holding that paying rent in consideration for occupancy

22

constitutes "[paying] for use of the premises" within the meaning of section 101.022(a)). Thus, the McDonalds were required to plead that the City breached the standard of care owed to an invitee.

The McDonalds pleaded that the City owns and operates the lift station that is located on the leased premises and that the lift station was emitting harmful $H_2S$ gases, which posed an unreasonable risk of harm about which the City had actual knowledge because it owned, maintained, and operated the lift station and about which the City had a duty to warn or eliminate.[12] And the lease in the record provides that the City was responsible for the maintenance and expenses of the area inside the lift station fence and for the upkeep of the lift station itself. The TCEQ report further shows that the City had actual knowledge that the lift station was producing harmful gases that were sufficient to cause the symptoms complained of by Mr. McDonald.[13]

The City contends that the McDonalds do not have a viable cause of action for premises defect because "the alleged injury occurred off-site," rather

---

[12] The McDonalds further pleaded that they did not know of the dangerous condition until the TCEQ tested the emissions around the lift station in September of 2006. But whether or not they knew of the dangerous condition is relevant only as to proportionate responsibility. See *Wilson*, 244 S.W.3d at 471 (citing *Parker*, 565 S.W.2d at 521). It does not alleviate the City's duty of reasonable care. See *id.*

[13] Mr. McDonald also stated in his affidavit that City employee Dave Stallings told him that the lift station was producing harmful $H_2S$ gases.

than on the lift station premises; in other words, the City argues that a premises defect claim could exist only if the McDonalds's injuries occurred inside the fenced-in area of the lift station.  But the McDonalds's pleadings alleged, and the jurisdictional evidence established, that harmful gases on the leased premises have caused injuries to the McDonalds and that the City had the right to control that portion of the leased premises from which those harmful gases emitted.  *See Parker*, 565 S.W.2d at 513–15; *Palermo*, 84 S.W.3d at 750; *see also Johnson County*, 926 S.W.2d at 285 (holding that a lessor remains liable for defects on portions of the premises that remain under the lessor's control).

After considering the McDonalds's pleadings and the jurisdictional evidence, taking as true all evidence favorable to the McDonalds and indulging every reasonable inference and resolving any doubts in their favor, we hold that the pleadings and jurisdictional evidence establish that the McDonalds have asserted a claim for premises defect sufficient to waive the City's governmental immunity.  *See Payne*, 838 S.W.2d at 237.  Accordingly, we hold that the trial court erred by granting the City's plea to the jurisdiction concerning the McDonalds's premises defect claim.  *See Miranda*, 133 S.W.3d at 230.  We sustain that portion of the McDonalds's first and second issues challenging the

24

trial court's grant of the City's plea to the jurisdiction on their premises defect claim.

### E. No Invocation of Trial Court's Subject Matter Jurisdiction over Negligence Claims for Use of Tangible Personal Property

The McDonalds also relied on the TTCA's use-of-tangible-personal-property exception to support their negligence claims. They pleaded that "during or about September and October 2006, and likely at other times," the City's employees negligently used a meter device to test and monitor $H_2S$ levels on the leased premises and at the lift station and that this use "caused Plaintiffs' damages." In an affidavit attached to the McDonalds's response to the City's plea to the jurisdiction, Mr. McDonald stated that on October 2, 2006, City employee Jason Fulco tested the $H_2S$ levels at the lift station and explained to him that if the machine started to flash, it meant that the $H_2S$ levels were not safe. Mr. McDonald stated in his affidavit that the testing device flashed in and around the lift station.[14] The City contends that the McDonalds have failed to establish that the use of the testing device caused the McDonalds's injuries.

---

[14] In the City's responses to interrogatories, attached to the McDonalds's response to the City's plea, the City stated that it "has not conducted tests regarding the level of $H_2S$" at the lift station.

The TTCA waives governmental immunity for "personal injury . . . caused by a condition or use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). A plaintiff must allege that usage of the personal property itself actually caused the injury; mere involvement of the property is insufficient. *Miller*, 51 S.W.3d at 588; *Bossley*, 968 S.W.2d at 343; *Renteria v. Hous. Auth. of El Paso*, 96 S.W.3d 454, 458 (Tex. App.—El Paso 2002, pet. denied).

Here, the real substance of the McDonalds's complaint was that the City "failed to use the information derived from said testing to warn" of dangerous $H_2S$ levels. But this complaint is centered around the misuse or non-use of information, rather than personal property, which does not fall within the TTCA's limited waiver of immunity. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994) (noting that our case law "does not permit claims against the State for misuse of information"); *Kelso v. Gonzales Healthcare Sys.*, 136 S.W.3d 377, 382 (Tex. App.—Corpus Christi 2004, no pet.) (holding that pleading misuse of information revealed by an EKG machine, rather than misuse of the EKG machine itself, did not waive immunity under the TTCA).

Additionally, Mr. McDonald had already explained his symptoms to the TCEQ and the TCEQ had already tested the $H_2S$ levels at the lift station prior to Falco testing the levels. Thus, the jurisdictional evidence establishes that the City's "use of tangible personal . . . property," i.e., the testing device, could not have proximately caused the McDonalds's injuries. *See Miller*, 51 S.W.3d at 588 ("Using that property must have actually caused the injury."); *Bossley*, 968 S.W.2d at 343 (holding that doors may have "furnish[ed] the condition that makes the injury possible" by permitting patient to escape into community where he committed suicide, but "the use and condition of the doors were too attenuated from [the patient's] death to be said to have caused it").

After considering the pleadings, taking as true all evidence favorable to the McDonalds, and indulging every reasonable inference and resolving any doubts in their favor, we hold that the McDonalds have not alleged sufficient facts to establish a waiver of the City's immunity based on its use of tangible personal property—the testing device. *See Heinrich*, 2009 WL 1165306, at *9; *Miranda*, 133 S.W.3d at 227–28; *Bland*, 34 S.W.3d at 555. Consequently, we hold that the trial court did not err by granting the City's plea to the jurisdiction on the McDonalds's negligence claim for use of tangible personal property, the testing device. We overrule the portion of the McDonalds's first

27

and second issues challenging the trial court's ruling granting the City's plea to the jurisdiction on this claim.

## V. NUISANCE

The McDonalds also complain in their first issue that the trial court erred by granting the City's plea to the jurisdiction on their nuisance claim.

Nuisance liability of a governmental entity arises only when governmental immunity is clearly and unambiguously waived by statute or when the nuisance rises to the level of a constitutional taking. *City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004); *City of Abilene v. Downs*, 367 S.W.2d 153, 159 (Tex. 1963) ("[I]f the construction and operation of the [sewage] plant results in a nuisance, such acts of the municipality constitute a damaging or taking of property under Section 17 of Article I of the Texas Constitution.").

Article I, section 17 of the Texas Constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." Tex. Const. art. I, § 17. To establish a takings claim, the plaintiff must show that (1) the governmental entity intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Steele v. City of Houston*, 603 S.W.2d 786, 788–92 (Tex. 1980).

28

For purposes of article 1, section 17, a governmental entity acts intentionally if it knows either that a specific act is causing identifiable harm or knows that the harm is substantially certain to result. *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004); *Jennings*, 142 S.W.3d at 316. Mere negligence that eventually contributes to the destruction of property is not a taking. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997). This requirement is rooted in the constitutional provision that a compensable taking occurs "only if property is damaged or appropriated for or applied to public use." *City of San Antonio v. Pollock*, No. 04-1118, 2009 WL 1165317, at *8 (Tex. May 1, 2009) (quoting *Gragg*, 151 S.W.3d at 554–55, which quotes *Steele*, 603 S.W.2d at 792). Moreover, the mere intentional operation of a sewer system is insufficient to support liability. *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004) (citing *Jennings*, 142 S.W.3d at 314).

In the present case, the McDonalds's petition alleged that (1) the City owns and operates the lift station for a public purpose of providing sewage management for its residents, (2) the City's operation of the lift station beyond capacity has emitted harmful $H_2S$ and other toxic gases into the air on and around the premises leased to the McDonalds, (3) these emissions have resulted in a dangerous condition that substantially interfered with the

29

McDonalds's use and enjoyment of their property, and (4) this interference rose to the level of a constitutional taking. The petition further alleged that the City's conduct has caused the McDonalds to suffer physical injuries and economic damages because they could not continue operating the Golf Center.

It is clear that the McDonalds's allegations include the elements of "taking"[15] and "public use." *See Kerr v. Tex. Dep't of Transp.*, 45 S.W.3d 248, 250, 252 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding that trial court erroneously sustained plea to jurisdiction because pleadings sufficiently alleged both nuisance and constitutional taking). In fact, the parties' arguments on appeal focus on the "intent" element.

Regarding "intent," the McDonalds alleged that the City knew or reasonably should have known that its operation of the lift station beyond capacity and without a mechanical bar screen would result in harmful emissions from the lift station. The petition states, "As a result of the TCEQ testing, [the City] had actual knowledge that the lift station was producing and emitting

---

[15] Takings liability may be premised on a leasehold interest such as the McDonalds's. *See, e.g.*, *City of Argyle v. Pierce*, 258 S.W.3d 674, 684 n.8 (Tex. App.—Fort Worth 2008, pet. dism'd) ("An ownership interest in a leasehold is the legal right to possess that property for a set period of time.") (citations omitted); *Reeves v. City of Dallas*, 195 S.W.2d 575, 579–80 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.) (allowing lessee to be compensated for the value of the lease in inverse condemnation proceeding).

hazardous and illegal contaminants . . . into the air on and around the leased premises and exposing the general public to said hazardous conditions." Additionally, the City's Preliminary Report—which was dated nearly nine months after the TCEQ report—summarized a February 2006 memorandum that recommended certain improvements to the lift station to increase capacity and meet projected flows.[16] The 2006 memorandum stated that the lift station was operating at a capacity below its then-projected flows and recommended as an "interim solution" that the City replace the damaged pumps with salvaged pumps for the time being so that the lift station could "return to compliance" and increase capacity "to meet the projected flows." The Preliminary Report shows that the City had not implemented the "interim solution" as of June 25, 2007, the date of the Preliminary Report. More importantly, the report shows that the City had not commenced making any of the recommended improvements to the lift station as of June 25, 2007.[17]

---

[16] The record does not include a copy of the 2006 memorandum, only the summary of the findings and recommendations made therein, as detailed in the Preliminary Report.

[17] The Preliminary Report also demonstrates that the metal cover placed over the hole where the mechanical bar screen was removed was "loosely placed over the access openings" and "severely corroded" from "trapped odorous gases." The report shows that the City desired to replace this section with a buried pipe section, which would "reduce odor and corrosive gas emissions," but that no action had been taken as of June 25, 2007. Although the Preliminary Report states only that the City "recently" removed the

31

Thus, the pleadings allege, and the jurisdictional evidence demonstrates, that, at a minimum, the City knew as early as September 2006—based on the TCEQ report—that the operation of the lift station was emitting harmful $H_2S$ gases that were sufficient to cause the McDonalds's injuries and property damage but that the City had not taken action to reduce these emissions as of June 2007—the date of the Preliminary Report. *Compare City of Van Alstyne v. Young*, 146 S.W.3d 846, 849 (Tex. App.—Dallas 2004, no pet.) ("The City's knowledge of alleged problems with the sewer pumps, however, is not the same as knowledge that their decision not to replace the pumps would result in a flood of the Young['s] home.") *and Pollock*, 2009 WL 1165317, at *8–9 (rejecting plaintiffs' claim that City knew its management of landfill was damaging their property or that damage was a necessary consequence when evidence showed only that City monitored gas generation and took steps to prevent damage), *with Golden Harvest Co., Inc. v. City of Dallas*, 942 S.W.2d 682, 689–90 (Tex. App.—Tyler 1997, writ denied) (holding that plaintiff's summary judgment evidence raised genuine issues of material fact regarding whether the city intentionally caused plaintiff's land to flood by failing to pre-release water, thereby taking, damaging or destroying plaintiff's property);

---

mechanical bar screen, the McDonalds alleged that the City removed this screen on or about October 2006.

*Bible Baptist Church v. City of Cleburne*, 848 S.W.2d 826, 830 (Tex. App.—Waco 1993, writ denied) (holding summary judgment improper when fact questions existed about whether city failed to correct cause of sewer backup); *Abbott v. City of Kaufman*, 717 S.W.2d 927, 932–33 (Tex. App.—Tyler 1986, writ dism'd) (holding, in reversing summary judgment for city based on governmental immunity, that plaintiffs properly alleged a taking or damaging of their property without compensation or consent).

Consequently, applying a de novo standard of review, we hold that the trial court erred by granting the City's plea to the jurisdiction on the McDonalds's nuisance claim. *See Miranda*, 133 S.W.3d at 226. We sustain the portion of the McDonalds's first and second issues challenging the trial court's ruling sustaining the City's plea to the jurisdiction on their nuisance claim.

## VI. BREACH OF IMPLIED WARRANTIES

The McDonalds brought claims against the City for breach of the implied warranties of habitability, fitness for a particular purpose, and suitability for intended commercial purposes.

The first two of these warranties do not apply to this case. The implied warranty of fitness for a particular purpose is created under the Texas Business and Commerce Code and applies only to goods. *See* Tex. Bus. & Comm. Code

Ann. § 2.102, 2.315 (Vernon 2009). The implied warranty of habitability applies only to residential properties. *See Gym-N-I Playgrounds, Inc. v. Snider*, 158 S.W.3d 78, 86 (Tex. App.—Austin 2005) ("The implied warranty of suitability is an extension to commercial leases of the implied warranty of habitability, which only applies to residential property."), *aff'd*, 220 S.W.3d 905 (2007). Because the McDonalds's breach of implied warranty claims involve a lease of real property for commercial purposes, no warranty of fitness for a particular purpose or of habitability exist as a matter of law under the facts of this case, and the trial court properly granted the City's plea to the jurisdiction on these claims.

However, the McDonalds also brought a claim for breach of the implied warranty of suitability for intended commercial purposes.[18] This implied warranty means "that at the inception of the lease there are no latent defects in the facilities that are vital to the use of the premises for their intended

---

[18] The City contends on appeal that the McDonalds did not properly plead this implied warranty, but a review of the McDonalds's third amended petition—the live petition on file when the trial court entered its order on the City's plea to the jurisdiction—shows otherwise. The McDonalds specifically alleged that the City leased to them commercial property with a latent defect, that the latent defect "was in an area that was vital to the property's commercial purpose," that this defect "made the property unsuitable for its intended commercial purpose," and that they suffered an injury as a result. *See Davidow v. Inwood N. Prof'l Group-Phase I*, 747 S.W.2d 373, 377 (Tex. 1988).

commercial purpose and that these essential facilities will remain in a suitable condition." *Davidow*, 747 S.W.2d at 377. This warranty only covers latent defects in the nature of a physical or structural defect that the landlord has the duty to repair. *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 871 (Tex. App.—Dallas 1989, writ denied).

A landlord may be liable for breach of the implied warranty of suitability for intended commercial purposes if the evidence shows that: (1) the landlord leased property to the tenant, (2) the lease covered commercial property, (3) the leased property had a latent physical or structural defect at the inception of the lease, (4) the defect was in an area that was vital to the property for its intended commercial purpose, (5) the defect made the property unsuitable for its intended commercial purpose, and (6) the tenant suffered injury. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 502 (Tex. App.—Houston [14th Dist.] 2007, pets. denied) (citing *Davidow*, 747 S.W.2d at 377, and *Coleman*, 778 S.W.2d at 871); *see McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App.—Dallas 2006, no pet.). A latent defect is one not discoverable by a reasonably prudent inspection of the premises at the inception of the lease. *See Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex. 1983).

35

Here, the McDonalds's pleadings contain a single conclusory statement that the leased premises "had a latent defect" that made the property unsuitable for its intended commercial purposes. The McDonalds did not allege that the lift station was emitting harmful $H_2S$ emissions when the lease commenced, that the defect was undiscoverable by a reasonably prudent inspection at that time, or that the $H_2S$ emissions rendered the leased premises unsuitable for their intended purposes.

Further, the jurisdictional evidence does not lend support to the McDonalds's claim. The TCEQ report, the Preliminary Report, and the 2006 memorandum are evidence of the state of the lift station and the emissions from the station in 2006 and 2007. Mr. McDonald stated in his affidavit that there were "occasionally strong odors that emitted from the lift station" during the time that he operated the Golf Center and that "the odors became stronger and more frequent" over time, but this does not establish a latent defect in existence when he assumed the lease.

After considering the McDonalds's pleadings and all relevant evidence, taking as true all evidence favorable to the McDonalds and indulging every reasonable inference and resolving all doubts in their favor, we hold that the pleadings and evidence do not establish a cause of action for breach of the implied warranty of suitability for intended commercial purposes. *See Heinrich*,

36

2009 WL 1165306, at *9 (recognizing that if relevant evidence fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law). Accordingly, applying the required de novo standard of review, we hold that the trial court correctly granted the City's plea to the jurisdiction on the McDonalds's breach of implied warranty claims. We overrule that portion of the McDonalds's first and second issues challenging the trial court's grant of the City's plea to the jurisdiction on their breach of warranty claims.

## VII. Opportunity to Amend

In their third and fourth issues, the McDonalds argue that the City did not allege incurable defects in the McDonalds's pleadings to support its plea to the jurisdiction and that, consequently, the trial court should have allowed the McDonalds to amend their petition to allege facts constituting a waiver of immunity.

Ordinarily, when a plaintiff is capable of remedying a jurisdictional defect in his pleading, dismissal with prejudice is improper. *See Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). However, when a plaintiff has been provided a reasonable opportunity to amend his pleading, but the amended pleading still does not allege facts that would constitute a waiver of immunity, the court should dismiss the case with prejudice. *Id.* This is so because the

37

plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined. *Id.*

In the present case, the McDonalds amended their petition three times prior to the trial court's ruling on the City's plea to the jurisdiction. At the time of the hearing on the City's plea to the jurisdiction, the McDonalds had twice amended their petition. After the hearing and after the trial court's oral ruling granting the City's plea in part and denying it in part, the McDonalds filed a motion for reconsideration, and the trial court held a hearing on that motion. The McDonalds subsequently filed two motions for leave to amend their pleadings and later amended their petition a third time. This third amended petition was the live pleading on file when the trial court entered its written order on the City's plea. In the written order, the trial court dismissed with prejudice the McDonalds's claims for nuisance, breach of warranty, negligence, gross negligence, negligence per se, takings, and premises defect.

A review of the record demonstrates that not only did the trial court afford the McDonalds a reasonable opportunity to amend their petition, but the McDonalds amended their petition three times before the trial court entered its written order on the City's plea.[19] *See, e.g., City of Midlothian v. Black*, 271

_____

[19] Significantly, the McDonalds have not identified on appeal any additional matters that they would allege in an amended petition.

S.W.3d 791, 800 (Tex. App.—Waco 2008, no pet.) (holding that trial court provided plaintiff with reasonable opportunity to amend and that plaintiff's amended pleading still did not allege facts that would support plaintiff's claims); *Lowell v. City of Baytown*, 264 S.W.3d 31, 37 (Tex. App.—Houston [1st Dist.] 2007, pet. filed) (holding dismissal with prejudice proper when plaintiffs did not amend their petition after being provided a reasonable opportunity to do so).

Thus, as a practical matter, the McDonalds have already had an opportunity to re-plead; they are not entitled to another opportunity to cure the jurisdictional defects detailed above. *See Brittain*, 268 S.W.3d at 811 (refusing to allow plaintiff another opportunity to amend when her pleadings did not affirmatively negate jurisdiction but when she had already had the opportunity to re-plead). To the extent that we affirm the trial court's ruling granting the City's plea to the jurisdiction, we hold that the trial court did not err by dismissing those claims with prejudice. We overrule the McDonalds's third and fourth issues.

## VIII. CONCLUSION

Having overruled in part and sustained in part the McDonalds's first and second issues and having overruled the McDonalds's remaining issues, we affirm the trial court's order granting the City's plea to the jurisdiction as to the McDonalds's claims for negligence alleging use of tangible personal property (the testing device) and use of motor-driven vehicles and for breach of warranty. We reverse the trial court's order granting the City's plea to the

jurisdiction as to the McDonalds's claims for negligence alleging use of motor-driven equipment, for premises defect, for nuisance, and we remand those claims to the trial court for further proceedings.  To the extent the McDonalds's pleadings attempt to state a claim based on any other waiver of governmental immunity, we affirm the trial court's order.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

CAYCE, C.J. dissents and concurs without opinion.

DELIVERED: June 25, 2009